1817.

BRASHER
v.
CORTLANDT.

---

*THE EXECUTORS OF BRASHER *against* W. R. CORT-
LANDT, a lunatic, by W. and P. CORTLANDT, his
committee.

[ * 400 ]

The real estate of a lunatic may be sold for the payment of his debts, on
a bill filed by a creditor for that purpose, without a *petition* of the com-
mittee of the lunatic, under the *act concerning idiots and lunatics*, &c.
(24 sess. ch. 30.) but the sale is to be conducted, under the directions
of the Court, by a master, and the committee of the lunatic, and the
terms of sale, &c. must be reported to the Court for its approbation, be-
fore any conveyance is executed.
The proper remedy for the creditor of a lunatic is in this Court, which
has the sole custody and disposal of his real estate, and not by an action
at law.

THIS was a suit by the creditor of a lunatic, to obtain a
sale of his real estate, for the payment of the debt, in case
the personal estate was found insufficient, &c. [See *ante*,
S. C. p. 242.]

The bill having been taken *pro confesso*, an order of ref-
erence was made to the master, to ascertain the amount of
the personal and real estate of the lunatic, and the amount
of the plaintiff's demand. The master made a report,
which was confirmed on the 30th of *October*; and an order
of sale o so much of the real estate as would be sufficient
to pay the debt, under the direction of a master, having been
made, that decretal order was, on *petition* of the committee

March 6th and
12th.

1817.

BRASHER
v.
CORTLANDT.

of the lunatic, set aside, without costs, and liberty given to the plaintiffs to set down the cause for a hearing. (See *ante*, S. C. p. 251.) The cause, accordingly, came on to be heard on the 6th instant.

*Th. Sedgwick*, for the plaintiffs.

*Henry*, for the defendants. He objected, 1. That the lunatic himself was not a party to the suit. 2. That one of the *items* in the account allowed by the master, was a note *dated 1st of *May*, 1784, for 50 pounds, given by the wife of the lunatic for house rent.

[ * 401 ]

3. That the statute did not authorize a sale of the lunatic's estate, except on petition of his *committee*.

4. That the plaintiff had a perfect remedy at law.

*March* 12th.

The cause stood over for consideration to this day.

THE CHANCELLOR. I have already, in a former stage of this cause, expressed an opinion on the first point, that the lunatic need not be a party, and that it was sufficient if his committee were before the Court in that character. Nor does it appear to me that there is any well-founded objection to the *items* composing the account allowed by the master. One principal *item* is a note, given by the wife of the lunatic, for house rent. I think it is necessarily to be inferred from the bill, as it stands confessed, that when this note was given, the husband was incompetent to transact business, or take charge of his family, and support them ; and the house rent was a charge properly made and allowed. It was an indispensable family expenditure ; and what gives decisive weight to the fitness of this and the other charges, is the fact, that *Th. Van Cortlandt*, one of the committee, as late as 1810, examined the account, and admitted its correctness, by promising to pay his proportion of it, as one of the children of the lunatic.

The only question then is, whether the lunatic's real estate can be sold for the payment of his debts, under a decree of this Court, except upon the petition of the committee, under the third section of the act *concerning idiots, lunatics, and infant trustees.* Here was no petition of the committee, but a suit regularly instituted by a creditor against them. I think it would be too narrow a construction of the act, to make the creditors' relief depend entirely upon the petition of the committee. The care and *charge of the lunatic's estate, as well as of his person, is committed to this Court, which is, also, charged with the payment of his debts out of the real estate, when the personal estate shall be insufficient.

[ * 402 ]

It is made the duty of the committee to present a petition when the personal estate shall be deficient; but there are no express words rendering it necessary that such a petition should precede every direction for the sale of the real estate. The petition is only to set forth the particulars and amount of the estate and debts: the act goes on, and says, "and if it shall appear to the chancellor, that the personal estate is insufficient for the payment of the lunatic's debts, he shall direct a sale of the whole, or a requisite part of the real estate," &c. The substance of the provision is, that the necessity of the sale, for the payment of debts, be made to *appear*, and the mode in which it shall appear cannot be essential. It is only a circumstance, and not of the essence of the provision. Suppose, to a suit instituted by the creditor, the committee should, in their answer, state an account of the debts and estate, and admit the necessity of a sale of the real estate, would not this be sufficient evidence to the Court of the insufficiency of the personal estate? The committee, in the present case, have done what is tantamount to this, by suffering the bill to be taken *pro confesso*, in which relief is sought by the sale of the real estate; and the master's report, which the defendants have had due opportunity to controvert, states expressly the insufficiency of the personal estate.

The fit and proper remedy for the creditor of the lunatic is in this Court, and not by an action at law. The commitment, by statute, of the care of the lunatic and his estate to this Court, and the power given to it to sell the real estate, shows that this is the proper tribunal for the creditor to resort to.

In *England*, where the chancery provision was not, until lately, so ample, as that under our act, it was deemed very *unfit that the lunatic should be subject to personal arrest, for debt in the Courts of common law. Lord *Eldon*, when chief justice of C. B. (*Steel* v. *Alan*, 2 *Bos. & Pull.* 362.) expressed himself strongly on this point, and observed, that he was "afraid that there was no provision in the laws of *England* against arresting a lunatic; and that the Court of Chancery was in the habit of taking extraordinary pains to assist the lunatic in this respect. Now, by the statute of 43 *Geo.* III. the committee may order the lunatic's estate to be sold for the payment of his debts, or, under the direction of the chancellor, raise money for that purpose by the mortgage of his estate.

The 8th section of our act contains particular directions for the Court, in respect to the regulation of sales of the real estate; and when it is declared, in the 6th section of the act, "that the real estate of any idiot or lunatic shall not be

·1817.

BRASHER
v.
CORTLANDT.

[ * 403 ]

1817.

BRASHER
v.
CORTLANDT.

aliened or disposed of otherwise than is directed by this act," I understand the act to mean, that the real estate can only be sold under the direction of this Court. The manner in which that direction shall be obtained, is left, as it was before, to the sound construction of the other parts of the act. But this last provision is important in another view. It goes absolutely to interdict the remedy at law, by prohibiting a sale of the real estate under execution. It cannot be sold otherwise than under the direction of this Court; and if the creditor cannot file a bill for the payment of his debt out of the real estate, and if it cannot be sold in any other mode of proceeding here, than that of the voluntary or compulsory application of the committee by petition, it would present the anomalous case of a creditor entitled to payment of his debt out of the lunatic's real estate, on deficiency of the personal, and yet not permitted to institute a suit, either at law or equity, for the purpose.

[ * 404 ]

*I am, accordingly, of opinion, that the plaintiffs in this case are entitled to a decree for the sale of the real estate of the lunatic ; and that a decree for that purpose ought to be entered, similar to the one entered on the 30th of *October* last, except that the part of the real estate, in possession of the defendants, be first sold, or such parts thereof as shall be sufficient, and can conveniently be sold separately, according to the provision in the former decree ; and, further, that one of the masters of this Court conduct the sale, together with the said defendants, the committee ; that the master see that the sale be made at the time and place appointed, if the committee shall neglect or refuse to attend and proceed in the sale ; and that the master, after making a memorandum in writing of the sale, at the time, report the sale, and the terms thereof, to the Court, for its confirmation, previous to the execution of the deed.

The following decree was thereupon entered :

" That so much of the said tract of land, consisting of four hundred and eighty acres, situate in *Yorktown*, in the county of *Westchester*, belonging to the said *William R. Van Cortlandt*, the lunatic, and mentioned in the complainant's bill of complaint, as shall be sufficient to raise the sum of seven hundred and thirty-six dollars and seventy-four cents, together with interest thereon, from the thirtieth day of *October* last, and the costs of suit, and can be conveniently, and without material injury to the residue of the said lands, be sold separately : that the part of the said real estate, in possession of the above defendants, who are committee as aforesaid, be first sold, according to the above directions. That the said sale, or sales, be at public auction, under the direction

and superintendence of one of the masters of this Court, he first giving six weeks' public notice of the time and place of such sale, together with a brief description of the premises generally, in at least two of the public newspapers, one of which to be printed in the city *of *New-York*, and the other in the county of *Westchester*, if any be printed in that county, and if not, then in two newspapers printed in the city of *New-York*. That the said sales shall be conducted and made by the said master, in conjunction with the said committee of the said lunatic, provided they, or one of them, attend at the time and place of sale, and unite in conducting the same. That a memorandum, in writing, be made at the time of the sale, and the terms of it, and that the said master, together with the said committee, provided they are ready and willing to unite with him for that purpose, and if not, that he report, separately, the sale and the terms thereof to the Court, for its confirmation previous to the execution of the deed, concerning which further directions will hereafter be given."